**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 20, 2026.**

**AUBREY L. THOMAS**
**UNITED STATES BANKRUPTCY JUDGE**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | LEAD CASE NO. 26-51866-ALT |
| | § | |
| KONA COAST VENTURE, LTD., | § | |
| HIDEOUT ON THE HORSESHOE, LLC, | § | SECOND CASE NO. 26-51900 |
| | § | |
| Debtors[1] | § | CHAPTER 11 |
| | § | |
| | § | (Jointly Administered Under Case No. |
| | § | 26-51866-ALT) |

**AGREED THIRD INTERIM ORDER**
**AUTHORIZING POST PETITION USE OF CASH COLLATERAL AND**
**GRANTING ADEQUATE PROTECTION TO MAV WTW HOLDINGS LLC**

Considering the *Debtors' Emergency Motion for Interim and Final Orders Authorizing Post-petition Use of Cash Collateral and Granting Adequate Protection to MAV WTW Holdings,*

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Kona Coast Venture, Ltd. (2553); Hideout on the Horseshoe, LLC (4170).

*LLC* (the "Cash Collateral Motion") filed by Kona Coast Venture, Ltd. [Dkt. 9] ("Kona Coast") and Hideout on the Horseshoe, LLC [Dkt. 6] ("Hideout," and together with Kona Coast, the "Debtors"), as Debtors and debtors-in-possession; and it appearing that the Debtors and MAV WTW Holdings, LLC ("MAV" or "Lender") have negotiated at arm's length and reached agreement on the terms set forth in this Third Interim Order resolving the Cash Collateral Motion on an interim basis; and the Court having conducted a third interim hearing on the Cash Collateral Motion (the "Third Interim Hearing"); and it appearing that notice of the Cash Collateral Motion and the Third Interim Hearing was good and sufficient under the circumstances and that no further notice need be given; and the Court having reviewed the Cash Collateral Motion and the record in these Chapter 11 cases (the "Chapter 11 Cases"); and the Debtors and Lender having consented to the form and entry of this Third Interim Order; and it appearing that entry of this Third Interim Order is in the best interests of the Debtors, their estates, their creditors, and all parties in interest; and after due deliberation and for good cause shown:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

**A. Petition Dates.** On July 7, 2026 (the "Kona Petition Date"), Kona Coast commenced its Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On July 13, 2026 (the "Hideout Petition Date," and together with the Kona Petition Date, the "Petition Dates"), Hideout commenced its Chapter 11 case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**B. Debtors-in-Possession.** The Debtors continue to operate their businesses and manage their properties as Debtors and debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed in either case.

**C.** **Notice.** Under the circumstances, the Debtors gave due and sufficient notice of the Cash Collateral Motion and the Third Interim Hearing in accordance with the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**D.** **Jurisdiction and Venue.** This Court has core jurisdiction over the Chapter 11 Cases, the Cash Collateral Motion, and the parties and property affected by this Third Interim Order pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**E.** **Statutory Committee Formation.** No official committee of unsecured creditors has been appointed in these Chapter 11 Cases.

**F.** **The Debtors' Indebtedness.** The Debtors are indebted to Lender, as assignee from Moody National Bank ("Moody"), pursuant to the following promissory notes and related loan documents (collectively, the "Loan Documents"): (i) that certain Promissory Note in the original principal amount of $11,519,000, given by Kona Coast and Hideout to Moody and dated August 31, 2017 ("Note 1"); (ii) that certain Promissory Note in the original principal amount of $515,000, given by Kona Coast to Moody and dated April 22, 2019 ("Note 2"); and (iii) that certain Promissory Note in the original principal amount of $709,000, given by Kona Coast and Hideout to Moody and dated September 16, 2020 ("Note 3," and together with Note 1 and Note 2, the "Notes"). MAV acquired the Notes and all associated rights from Moody on or about February 28, 2025. Hideout is a co-maker on Note 1 and Note 3. The Debtors' real and personal property are cross-collateralized under the Notes.

**G.** **Pre-petition Cash Collateral.** For purposes of this Third Interim Order, the term "Cash Collateral" has the meaning set forth in section 363(a) of the Bankruptcy Code and includes the cash and cash equivalents held in the Debtors' operating and depository accounts as of the

Petition Dates that constitute proceeds of collateral in which Lender holds a valid, perfected security interest. As of the Petition Dates, Kona Coast held approximately $286,794.11 in its accounts, and Hideout held approximately $76,146.68 in its accounts. Additional sums were owed Kona Coast for ticket sales made prior to the Petition Date. Proceeds from rentals of Hideout are Lender's cash collateral under §552(b)(2).

**H. Post-petition Cash Collateral.** Lender asserts that post-petition proceeds arising from pre-petition contracts are Lender's cash collateral. Debtors expressly reserve all rights to contest Lender's asserted interest in post-petition proceeds. Pending resolution of the dispute regarding the Lender's interest in post-petition proceeds by agreement or Court order, the Debtors shall treat all post-petition proceeds as Cash Collateral to be utilized only in accordance with this Third Interim Order. Any reference to Cash Collateral in this Third Interim Order shall include post-petition proceeds. For the avoidance of doubt, nothing in this Third Interim Order shall constitute an admission by the Debtors as to the validity, priority, or perfection of Lender's asserted security interest in the Debtors' post-petition proceeds.

**I. Stipulation as to Indebtedness and Liens.** As a condition to the Debtors' authorized use of Cash Collateral, the Debtors hereby stipulate and acknowledge that, as of the Petition Date: (a) the Debtors were indebted to the Lender in the aggregate principal amount of $7,031,519.70, together with all accrued and unpaid interest, fees, costs, expenses, and other obligations arising under the Loan Documents; and (b) the Lender's liens and security interests securing such indebtedness are valid, binding, enforceable, properly perfected, and first-priority liens and security interests in the pre-petition collateral, subject only to valid, perfected, and unavoidable liens, if any, that are senior in priority under applicable law.

**J. Chief Restructuring Officer.** The Debtors filed an *Emergency Application for Authorization to (A) Employ and Retain HMP Advisory Holdings, LLC d/b/a Harney Partners as Chief Restructuring Officer and Financial Advisory Services, and (B) Designate Gregory S. Milligan as the Debtors' Chief Restructuring Officer* [Dkt. 48] (the "CRO Motion") on July 24, 2026, in accordance with the First Interim Cash Collateral Order. The Court granted the CRO Motion on August 3, 2026, authorizing the Debtors to retain Gregory S. Milligan as Debtors' chief restructuring officer ("CRO") to, without limitation, have the exclusive right to market the properties for sale and to oversee all accounting and finance functions of the Debtors. Lender's consent to the use of its Cash Collateral is expressly conditioned upon the retention of, and Debtors' cooperation with, the CRO.

**K. Mediation**. The Debtors filed an *Emergency Motion to Appoint Eric Taube as Mediator* [Dkt. 43]. The Court granted the motion on August 3, 2026, and the parties have scheduled mediation with Eric Taube on September 1, 2026, to advance negotiation essential to the reorganization of the Debtors. Lender's consent to the use of its Cash Collateral is expressly conditioned upon completion of the scheduled mediation.

**L. Agreement of the Parties; Consent.** The Debtors and Lender have negotiated in good faith and at arm's length and have agreed, subject to the approval of this Court, to the Debtors' interim use of Cash Collateral on the terms and conditions set forth in this Third Interim Order. Based upon that agreement, and for the adequate protection provided herein, Lender consents to the Debtors' use of Cash Collateral on the terms set forth in this Third Interim Order.

**M. Immediate Need; Irreparable Harm.** The Debtors have an immediate need to use Cash Collateral to fund the actual and necessary expenses of operating their businesses and to avoid immediate and irreparable harm to their estates pending a final hearing. Kona Coast's live

entertainment venue operations are seasonal and time-sensitive, and Hideout's cabin and condominium rental operations require ongoing expenditures to maintain the properties and guest services and are also dependent on seasonal operations during the summer. Preservation of the Debtors' going-concern value is in the best interests of the estates and all parties in interest, including Lender.

**N. Good Cause.** Good and sufficient cause has been shown for entry of this Third Interim Order. The terms of the Debtors' use of Cash Collateral set forth herein are fair and reasonable, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

**IT IS HEREBY ORDERED THAT:**

**1. Interim Authorization.** The Cash Collateral Motion is GRANTED on an interim basis as set forth in this Third Interim Order. The Debtors are authorized to use Cash Collateral solely in accordance with the terms and conditions of this Third Interim Order.

**2. Budget; Permitted Variances; Limitation to Line Items.** The Debtors are authorized to use Cash Collateral only for the actual and necessary expenses of operating their businesses and only for the line items set forth in the budgets attached hereto as Exhibit A-1 (Kona Coast) and Exhibit A-2 (Hideout) (as each may be updated by a consensual or Court-approved budget, collectively, the "Budget"). The Debtors' use of Cash Collateral shall not exceed (a) any individual line item of the applicable Budget by more than ten percent (10%), or (b) the applicable Budget in the aggregate by more than five percent (5%), in each case tested on a cumulative basis from the entry of this Third Interim Order. The Debtors shall not use Cash Collateral for any purpose not set forth as a line item in the Budget absent the prior written consent of Lender or further order of this Court.

**3. Replacement Liens.** As adequate protection for the Debtors' use of Cash Collateral, Lender is hereby granted valid, perfected, and enforceable post-petition replacement liens (the "Replacement Liens") on all post-petition assets of the Debtors of every kind and nature (and not merely property of the same type as Lender's pre-petition collateral), including, without limitation, all post-petition cash, accounts, accounts receivable, revenues, rents, income, and proceeds acquired or generated by the Debtors and their estates from and after the applicable Petition Date, without regard to the pending dispute over the extent of Lender's pre-petition perfection. The Replacement Liens are and shall be deemed automatically valid, perfected, and enforceable as of the applicable Petition Date without the necessity of any further filing, recordation, or other act, and without regard to whether Lender held a validly perfected pre-petition lien on any such category of collateral. The Replacement Liens shall secure an amount equal to the aggregate diminution, if any, in the value of Lender's interest in the Cash Collateral from and after the applicable Petition Date.

**4. Adequate Protection Payments.** As additional adequate protection, on or before September 1, 2026, the Debtors shall make adequate protection payments to Lender in an amount not less than the monthly interest accruing on the principal balance of the Notes at the rate of ten percent (10%) per annum. The Lender reserves all rights as to default-rate interest and § 506(b) amounts.

**5. Chief Restructuring Officer**. The CRO shall be given immediate access to the Debtors financials and any other information he deems necessary to carry out his duties. The CRO shall comply with the terms of this Third Interim Order and shall begin marketing the properties for sale as quickly as possible in accordance with section 7 below. Lender's consent to the use of

Cash Collateral is expressly conditioned upon the Debtors' cooperation with the CRO in the performance of his duties.

**6. Segregation and Accounting; Reporting; Inspection.** The Debtors shall (a) segregate and account for all pre-petition cash held in their accounts as of the Petition Dates, which pre-petition cash shall not be used absent the prior written consent of Lender or further order of this Court, except in accordance with the Budget; (b) segregate and account for the source and use of all post-petition proceeds, which post-petition cash shall not be used absent the prior written consent of Lender or further order of this Court, except in accordance with the Budget; (c) provide Lender with weekly budget-to-actual variance reporting, in form and substance reasonably acceptable to Lender; and (d) afford Lender and its professionals reasonable inspection and information rights with respect to the Debtors' books, records, collateral, and business operations, upon reasonable notice and during normal business hours, including, without limitation, weekly calls with the CRO.

**7. Sale Milestone; Conditional Relief from the Automatic Stay.** The Debtors shall close a sale of the Properties no later than October 22, 2026 (the "Sale Deadline"). As used herein, the "Properties" means the Debtors' real property constituting collateral securing the Notes, including the Whitewater Amphitheater property and the Hideout cabin and condominium property. Unless otherwise ordered prior to the Sale Deadline, if the Debtors have not closed a sale of the Properties on or before the Sale Deadline, then, without the need for any further motion, notice, hearing, or order of this Court, the automatic stay imposed by section 362(a) of the Bankruptcy Code shall be deemed automatically modified and terminated as to Lender solely with respect to the Properties, to permit Lender to exercise all of its rights and remedies under the Loan Documents and applicable non-bankruptcy law, including the right to foreclose upon the

Properties. The parties intend that such relief permit Lender to conduct a non-judicial foreclosure sale of the Properties on the first Tuesday of November 2026 (November 3, 2026), or the next available foreclosure sale date thereafter. Solely to preserve the November 2026 foreclosure date, and notwithstanding the automatic stay, Lender is authorized to give, post, mail, and file the notices of sale required by section 51.002 of the Texas Property Code in advance of the Sale Deadline; provided that Lender shall not conduct or complete any foreclosure sale of the Properties unless and until the Debtors have failed to close a sale of the Properties on or before the Sale Deadline. Notwithstanding the foregoing, the CRO or any party in interest may, for cause, file a motion seeking an extension of the Sale Deadline and/or continuation of the automatic stay. All rights of Lender to oppose such motion, and all rights of the Debtors, the CRO, and all parties in interest to seek or oppose such relief, are expressly preserved.

**8.** **Mediation.** The Debtors, the Lender, and other parties in interest as may be appropriate shall mediate on September 1, 2026, or such other date as all parties agree. No Final Order will be entered prior to the conclusion of mediation absent the express consent of the Lender and the Debtors.

**9.** **Termination.** The Debtors' authorization to use Cash Collateral under this Third Interim Order shall terminate on the earliest of: (i) September 1, 2026, unless extended by agreement of the parties or further Court order; (ii) the date of the final hearing on the Cash Collateral Motion (the "Final Hearing"); (iii) the effective date of a confirmed plan of reorganization in either Chapter 11 Case; (iv) the dismissal or conversion of either Chapter 11 Case; (v) the entry of an order granting relief from the automatic stay to Lender with respect to any material collateral; and (vi) two (2) business days following receipt by the applicable Debtor of a written notice of default from Lender of such Debtor's breach of any material term of this

Third Interim Order, provided that the applicable Debtor shall have the opportunity to cure any such breach within such two (2) business-day period, and if cured, the Debtors' authorization to use Cash Collateral shall not terminate.

**10. Reservation of the Debtors' Challenge Rights.** Except as expressly provided herein, all rights of the Debtors and all parties in interest to contest the nature, extent, validity, priority, and perfection of Lender's asserted security interests in the Debtors' deposit accounts and post-petition revenue from pre-petition contracts are expressly preserved. Entry of this Third Interim Order is without prejudice to, and shall not constitute a waiver of, any such right, and nothing herein shall be construed as a finding that Lender holds a valid, perfected pre-petition security interest in the Debtors' deposit accounts or post-petition proceeds.

**11. Reservation of Lender's Rights.** All rights, remedies, claims, and defenses of Lender under the Loan Documents, the Bankruptcy Code, or applicable non-bankruptcy law are expressly preserved, including the right to move for relief from the automatic stay, to seek modification of this Third Interim Order, to seek additional adequate protection, or to seek conversion or dismissal of either Chapter 11 Case; provided, however, that nothing in this Third Interim Order shall alter, expand, or enhance any right that Lender would not otherwise have under applicable law.

**12. Tax Liens.** Notwithstanding any provision of this Third Interim Order, any ad valorem tax liens currently held by taxing entities, or any post-petition statutory liens arising under Texas law, with respect to any property of the Debtors and/or their estates shall neither be primed by nor subordinated to any liens granted herein.

**13. Final Hearing.** To the extent that the Debtor and Lender do not request an extension of this Third Interim Order and thereby reset the Final Hearing, the Final Hearing on the

Cash Collateral Motion shall be held on September 9, 2026, at 9:00 a.m. (Central Time) before the Honorable Aubrey L. Thomas, with virtual participation permitted pursuant to the Court's procedures. Any objections or responses to entry of a final order on the Cash Collateral Motion must be filed with the Clerk of this Court and served on counsel for the Debtors and counsel for Lender no later than September 7, 2026, 2026, at 11:59 p.m. (Central Time).

**14. Binding Effect.** The provisions of this Third Interim Order shall be binding upon and inure to the benefit of the Debtors, Lender, any committee appointed in these Chapter 11 Cases, and all other parties in interest, and their respective successors and assigns, including any trustee subsequently appointed in these Chapter 11 Cases or any successor cases.

**15. Immediate Effectiveness.** Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, and Rule 62(a) of the Federal Rules of Civil Procedure, this Third Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Third Interim Order.

**16. Retention of Jurisdiction.** This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Third Interim Order.

###

*Submitted by and Entry Requested By*:

**HUSCH BLACKWELL LLP**

Lynn Hamilton Butler (SBN 03527350)
Email: lynn.butler@huschblackwell.com
Tara T. LeDay (SBN 24106701)
Email: tara.leday@huschblackwell.com
Jennifer Pollan (SBN 24150828)
Email: jennifer.pollan@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
Main No. (512) 472-5456
Fax No. (512) 479-1101

**PROPOSED ATTORNEYS FOR THE DEBTOR AND DEBTOR IN POSSESSION, KONA COAST VENTURE, LTD. AND HIDEOUT ON THE HORSESHOE, LLC**

-and-

STREUSAND | LANDON OZBURN | LEMMON LLP
Rhonda Mates (SBN 24040491)
Email: Rhonda Mates mates@slollp.com
Stephen W. Lemmon (SBN 12194500)
Email: lemmon@slollp.com
1801 S. MoPac, Suite 320 |
Austin, Texas 78746
Main No. (512) 236-9900
Fax No. (512) 236-9904

**COUNSEL FOR MAV WTW HOLDINGS, LLC**

# Exhibit A-1

**Kona Coast Venture, Ltd**
Updated Budget to 9/5/2026

| Shows: | Hardy-country | Dylan Gossett | |
|---|---|---|---|
| | 7 | 8 | 9 |
| **Inflows** | **8/22/2026** | **8/29/2026** | **9/5/2026** |
| Net Ticket Sales | | 75,000 | 150,000 |
| Concession Sales | | 50,000 | 50,000 |
| Total Revenue- Show | - | 125,000 | 200,000 |
| Parking income- Shows | - | 7,000 | 7,000 |
| Season Suites | | | |
| Facility Fees | - | - | - |
| Lease Income- food venue | | | |
| Total Revenue | - | 132,000 | 207,000 |
| | | | |
| Interco- HOH | | | |
| Interco- WWS | | | |
| Total transfers | - | - | - |
| | | | |
| Total Inflows | - | 132,000 | 207,000 |

| **Outflows** | **8/22/2026** | **8/29/2026** | **9/5/2026** |
|---|---|---|---|
| Band costs-Deposits | | | |
| Band costs-other | | 93,750 | 48,750 |
| Payroll | | | 36,000 |
| Sales Tax remitted | 65,000 | | |
| Advertising | 3,500 | | |
| Bank charges | | | 2,000 |
| Cash for Bands | 4,000 | 4,000 | - |
| Dues & Subscriptions | | | |
| Insurance | | | |
| Interest expense | | | |
| Legal Fees | | | |
| Licenses | | | |
| Lighting | 10,000 | 10,000 | 10,000 |
| Operating- catering | 5,000 | 5,000 | 5,000 |
| Operating supplies | 3,000 | 3,000 | 3,000 |
| Equipment Rent | 12,050 | 12,050 | 12,050 |
| Repairs | 1,000 | 1,000 | 1,000 |
| SBA loan payment | | | |
| Security | 4,075 | 15,456 | 14,456 |
| Supplies - general | 500 | 500 | 500 |
| Taxes- Payroll | | | 8,500 |
| Utilities | 1,000 | 1,000 | 1,000 |
| Prof Services | - | - | - |
| Guaranted Pmt | - | - | - |
| Total- Outflows | 109,125 | 145,756 | 142,256 |

| | **8/22/2026** | **8/29/2026** | **9/5/2026** |
|---|---|---|---|
| Beginning Cash (as of 8/19) | 145,996.00 | 36,871.00 | 23,115.00 |
| Inflows- revenue | - | 132,000.00 | 207,000.00 |
| Outflows | (109,125.00) | (145,756.00) | (142,256.00) |
| Transfers | - | - | - |
| Ending Cash | 36,871.00 | 23,115.00 | 87,859.00 |

# Exhibit A-2

**Hideout on the Horseshoe, LLC**
**Cash Flow 13 week**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inflows** | **7/11/2026** | **7/18/2026** | **7/25/2026** | **8/1/2026** | **8/8/2026** | **8/15/2026** | **8/22/2026** | **8/29/2026** | **9/5/2026** | **9/12/2026** | **9/19/2026** | **9/26/2026** | **10/3/2026** |
| Rental- cabins | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Rental - condos | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 3,000 | 3,000 | 2,000 | 2,000 |
| Total Income | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 13,000 | 13,000 | 12,000 | 12,000 |
| Total Outflows | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 13,000 | 13,000 | 12,000 | 12,000 |

| **Outflows** | **7/11/2026** | **7/18/2026** | **7/25/2026** | **8/1/2026** | **8/8/2026** | **8/15/2026** | **8/22/2026** | **8/29/2026** | **9/5/2026** | **9/12/2026** | **9/19/2026** | **9/26/2026** | **10/3/2026** |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Payroll | 14,000 | | 14,000 | | 15,000 | | 15,000 | | 14,000 | | 12,000 | | 12,000 |
| Advertising | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Bank & merchant fees | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 390 | 390 | 360 | 360 |
| Commissions & fees | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 500 | 500 | 500 | 500 |
| Contract labor- cleaning | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| Guaranted Pmt | | | | | | | | | | | | | |
| Insurance | 3,600 | | | 3,600 | | | | | 3,600 | | | | 3,600 |
| Interest | 1,400 | | | | 1,400 | | | | | 1,400 | | | |
| Operating supplies | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Pest Control | 600 | | 600 | | 600 | | 600 | | 600 | | 600 | | 600 |
| Prof Services | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Rent -equipment | | | | | | | | | | | | | |
| Repairs | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 |
| SBA | | | | 731 | | | | | 731 | | | | 731 |
| Taxes- Hotel tax paid | | 7,000 | | | | | 7,500 | | | | | 6,000 | |
| Taxes- waterl tax paid | | 5,800 | | | | | 3,800 | | | | | 3,000 | |
| Taxes- payroll | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 |
| Utiities | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| Total Expenses | 28,300 | 20,500 | 23,300 | 12,031 | 25,700 | 7,700 | 35,600 | 7,700 | 27,631 | 8,590 | 20,790 | 16,160 | 25,091 |
| Total Outflows | 28,300 | 20,500 | 23,300 | 12,031 | 25,700 | 7,700 | 35,600 | 7,700 | 27,631 | 8,590 | 20,790 | 16,160 | 25,091 |

| | - | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **7/11/2026** | **7/18/2026** | **7/25/2026** | **8/1/2026** | **8/8/2026** | **8/15/2026** | **8/22/2026** | **8/29/2026** | **9/5/2026** | **9/12/2026** | **9/19/2026** | **9/26/2026** | **10/3/2026** |
| Beginning Cash | 75,835.87 | 67,535.87 | 67,035.87 | 63,735.87 | 71,704.87 | 66,004.87 | 78,304.87 | 62,704.87 | 75,004.87 | 67,373.87 | 71,783.87 | 63,993.87 | 59,833.87 |
| Inflows | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 | 13,000.00 | 13,000.00 | 12,000.00 | 12,000.00 |
| Outflows- exo | (28,300.00) | (20,500.00) | (23,300.00) | (12,031.00) | (25,700.00) | (7,700.00) | (35,600.00) | (7,700.00) | (27,631.00) | (8,590.00) | (20,790.00) | (16,160.00) | (25,091.00) |
| Ending Cash | 67,535.87 | 67,035.87 | 63,735.87 | 71,704.87 | 66,004.87 | 78,304.87 | 62,704.87 | 75,004.87 | 67,373.87 | 71,783.87 | 63,993.87 | 59,833.87 | 46,742.87 |