**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 12, 2026.**

**AUBREY L. THOMAS**
**UNITED STATES BANKRUPTCY JUDGE**

---

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:

| | | |
|---|---|---|
| KONA COAST VENTURE, LTD, | § | Case No. 26-51866-ALT |
| | § | |
| | § | |
| | § | |
| HIDEOUT ON THE HORSESHOE, LLC, | § | Case No. 26-51900-ALT |
| | § | |
| | § | Chapter 11 |
| Debtors. | § | |
| | § | Jointly Administered Under |
| | § | Case No. 26-51866-ALT |

**MEMORANDUM OPINION AND ORDER REGARDING DEBTORS' MOTION TO AUTHORIZE THE SALE OF THE DEBTORS' PROPERTY FREE AND CLEAR PURSUANT TO 11 U.S.C. § 363(f)(4)**

Before the Court is the Debtors' *Motion for an Order (I) Authorizing the Sale of the Debtor's Property Free and Clear of All Liens, Claims, Interests, and Encumbrances, Including the Heiser Hollow Covenant; (II) Approving the Form and Manner of Notice of Sale and Notice to Executory Contract and Unexpired Lease of*

*Counterparties; and (III) Granting Related Relief* (the "Motion"),[1] Sun NG Whitewater RV LLC's ("Sun NG") *Objection to the Motion* (the "Response"),[2] the Debtors'[3] *Reply in Support of the Motion* (the "Reply"),[4] Sun NG's *Supplemental Brief Regarding the Deed CC&Rs Nonwaiver Provision*,[5] the Debtors' *Brief in Response to the Court's Sua Sponte Order*,[6] and Sun NG's additional *Supplemental Brief filed in Response to the Court's Sua Sponte Order*.[7] For the reasons set forth herein, the Court denies the Motion as to the substantive relief of selling free and clear of the Deed CC&Rs but approves the Debtors' proposed *Notice to Executory Contract and Unexpired Lease of Counterparties.*

## Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Standing Order of Reference of the United States District Court for the Western District of Texas dated October 4, 2013. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N)–(O). This Court has constitutional authority to enter a final order on the Motion.[8] Venue is proper under 28 U.S.C. § 1409.

## Statement of Relevant Facts

On February 19, 2008, Heiser Hollow Partners, LLC (the "Grantor"), transferred certain real property, located at 11860 FM 306, New Braunfels, TX 78132

---

1 Docket No. 110. Unless otherwise indicated, "Docket No." refers to Case No. 26-51866-ALT.

2 Docket No. 120.

3 "Debtors" refers collectively to both Kona Coast Venture, Ltd. ("Kona") and Hideout on the Horseshoe, LLC ("Hideout"). Kona also owns and operates Andy's River Toobs and a 3-unit short-term rental property. Docket No. 110 at 1, ¶ 9. Hideout is a Texas limited liability company that owns approximately 4.335 acres of real property on the Guadalupe River in Comal County, Texas, on which it operates a boutique hotel and 19-cabin property. *Id.* at 4–5, ¶ 10. Importantly, Kona owns the Property at issue solely, not Hideout.

4 Docket No. 121.

5 Docket No. 135.

6 Docket No. 136.

7 Docket No. 137.

8 *Stern v. Marshall*, 564 U.S. 462, 500 (2011) (holding that bankruptcy courts possess authority to handle matters that stem from the bankruptcy itself); *BMO Harris Bank v. Vista Mktg. Grp., Ltd. (In re Vista Mktg. Grp., Ltd.*), 548 B.R. 502, 512 (Bankr. N.D. Ill. 2016) (holding that a matter under section 363 "stems from the bankruptcy itself" and is a matter "within this court's constitutional authority to enter final judgment").

(the "Property") via a Special Warranty Deed to Kona.[9] As part of that transfer, the Grantor declared that the transfer of the Property was subject to certain covenants, conditions, and restrictions (the "Deed CC&Rs") that "are intended to be real covenants which touch and concern the Property."[10] William Korioth, as manager of Kona, signed the Special Warranty Deed, and acknowledged "acceptance of this Deed and all of the Deed CC&Rs and other matters set forth herein."[11]

The Deed CC&Rs acknowledged that the Property contained a live music amphitheater and, among other things, imposed certain restrictions on when performances could occur,[12] whether Kona could modify or expand existing structures on the Property,[13] and also prohibited certain activities, such as maintaining livestock on the Property.[14] The purpose of the Deed CC&Rs was "protecting the value, attractiveness, and desirability of the Property and all of the Covered Lots, as well as the neighboring property known as 'Heiser Hollow.'"[15]

Although the Deed CC&Rs contain several definitions, "Heiser Hollow" and the "neighboring property" are not defined. A 1969 USGS map depicts that "Heiser Hollow" is the name for a valley located in the general vicinity of the Property.[16] That said, Korioth interpreted the term more narrowly, referring to approximately 450 additional acres adjacent to the Property that were sold around the same time Kona acquired the Property, and that the buyer of those acres intended to develop into a residential neighborhood.[17]

Ultimately, the neighboring residential development never came to be, and the

---

[9] Docket No. 132, Ex. 6. The Special Warranty Deed lists "Kona Coast, LLC" as the Grantee, which is the general partner of the Debtor, Kona Coast Venture, Ltd. No party disputes that the Property is owned by the Debtor, Kona Coast Venture, Ltd., despite title being held in the name of its general partner.

[10] *Id.* at Ex. 6 at 2.

[11] *Id.* at Ex. 4 at 8.

[12] *Id.* at Ex. 4, sec. 3.02.

[13] *Id.* at Ex. 4, secs. 3.03, 3.07.

[14] *Id.* at Ex. 4, secs. 3.04, 3.08, 3.09.

[15] *Id.*

[16] Docket No. 135, Ex. A.

[17] Hearing Recording at 11:12:18 AM CDT, *In re Kona Coast Venture, Ltd.*, No. 26-51866-alt, (Bankr. W.D. Tex. Sept. 9, 2026). Unless otherwise noted, "Hearing Audio" refers to the September 9, 2026, hearing.

adjacent acreage was ultimately divided up and sold to various owners.[18] During the years following Kona's acquisition of the Property, there is little to no evidence regarding the various parties' conduct under the Deed CC&Rs. That said, although no Architectural Control Committee was ever formed as required by Section 3.14 of the Deed CC&Rs, Kona generally complied with the requirements of the Deed CC&Rs by maintaining the Property in good condition and continuing to operate an amphitheater on the premises.

Despite its general compliance, Kona consistently disregarded one provision of the Deed CC&Rs: the requirement to hold concerts only on Saturdays or the holiday weekends of Memorial Day, Fourth of July, and Labor Day. The evidence presented by the parties shows that between 2008 and 2026, between 12% and 71% of concerts annually held at the Property were held on a day other than what was permitted under Section 3.02 of the Deed CC&Rs.[19] There is no evidence that any interest holder objected to the nonconforming concerts.

In 2019, Sun NG obtained title to certain real property located North of the Property.[20] Sun NG's parent company is Northgate Holdings, a Michigan company that owns and operates resort-style RV parks throughout the country.[21] Sun NG developed and now operates a recreational outdoor camping and RV resort called Camp Fimfo on its property.[22] In 2021, Kona and Sun NG entered into a land swap agreement whereby Sun NG transferred a portion of its property to Kona in exchange for a northern sliver of the Property, referred to as "Lot 3."[23] Since opening Camp Fimfo, Kona and Sun NG have had a mutually beneficial relationship. Sun NG would promote concerts to be held at Kona's amphitheater, while Kona's concerts would result in concert attendees booking a stay at Camp Fimfo.[24]

Since acquiring Lot 3, Sun NG has taken the position that it has the right to

---

18 Docket No. 132, Exhibits 5A–5J.
19 Docket No. 121, Ex. F-1.
20 Docket No. 132, Ex. 5E.
21 Hearing Audio at 01:21:52 PM CDT.
22 *Id.* at Ex. 12.
23 Docket No. 126, Ex. C.
24 Docket No. 132, Ex. 11.

enforce the Deed CC&Rs.[25] At the same time, Kona has taken the position that the Deed CC&Rs were "never realized" or "void."[26] In essence, the parties agreed to disagree, with Sun NG stating that it was "[h]appy to keep working together cooperatively as issues arise,"[27] and Kona stating that they should "help each other make this whole development the best experience in Texas."[28] Neither party agreed with the other, but neither party took legal action to dispute the enforceability of the Deed CC&Rs. Between 2021 and February 2026, Kona provided its concert schedule to Sun NG and, in turn, Sun NG reviewed Kona's proposed concert schedule and that purport to waive any violation of the Deed CC&Rs.[29] But that implicit truce ended in April 2026.

Because of litigation between the owners of Kona,[30] the Debtors' secured lender for the Property, Moody National Bank ("Moody"), declined to refinance Kona's secured obligation when it matured, and the Debtors defaulted on that note.[31] Moody initiated foreclosure proceedings, prompting Korioth to seek assistance from Sun NG's representatives to help him resolve the dispute with Moody.[32] In connection with those discussions, Sun NG representatives unabashedly recommended using the Deed CC&Rs as leverage to encourage Moody not to foreclose on the Property. Korioth was aware of this strategy and, at the very least, acquiesced to it.

In a turn of events, investors connected to Northgate Holdings (Sun NG's parent company) organized a new entity, MAV WTW Holdings, LLC ("MAV"), and acquired the note from Moody.[33] This briefly delayed foreclosure on the Property. The Debtors attempted, unsuccessfully, to refinance the balance owed to MAV but found the Deed CC&Rs to be an obstacle to such refinancing. There is no evidence that MAV

---

25 Docket No. 126, Exs. F, L.

26 Docket 135 at 4, ¶¶ 7–10.

27 *Id.* at Ex. F.

28 *Id.* at Ex. L.

29 Docket No. 126, Exs. H, I, J, K. These waivers, however, included a reservation of rights as to future nonconforming performances.

30 Docket No. 14 at 3–4, ¶¶ 7–12.

31 *Id.* at 4–5, ¶¶ 13–15.

32 Hearing Audio at 12:33:30–12:34:00 CDT; *see also* Docket No. 132, Ex. 25.

33 Docket No. 132, Ex. 3 at 15–47.

offered to refinance the obligation itself, and MAV ultimately initiated foreclosure, posting the Property for sale on April 7, 2026.[34] The once symbiotic relationship between Kona and Sun NG thus soured.

On April 1, 2026, the Debtors initiated a state court lawsuit in Comal County, Texas, against MAV and Sun NG, seeking, among other relief, a declaratory judgment that the Deed CC&Rs are unenforceable on the grounds of abandonment, waiver, and quasi-estoppel (the "State Action"). Although the State Action temporarily stayed foreclosure, MAV reposted the Property for foreclosure sale, and the pressure of a pending foreclosure proved to be too much for the Debtors.

On July 7, 2026, the Debtors filed petitions for bankruptcy relief under chapter 11 of the Bankruptcy Code.[35] Their anticipated reorganization contemplates either a sale of all of the Debtors' assets or a refinance of the MAV obligation and continued operations. On July 27, 2026, the Court approved, on an interim basis, the Debtors' *Emergency Motion for Interim and Final Orders Authorizing Post-Petition Use of Cash Collateral and Granting Adequate Protection to MAV WTW Holdings, LLC* (the "Interim Cash Collateral Order").[36] Under the Interim Cash Collateral Order, the Debtors are required to close a sale or refinance of the Property no later than October 22, 2026 (the "Sale Deadline").[37] Unless otherwise ordered by the Court, if the Debtors have not closed on a sale of the Property on or before the Sale Deadline, the automatic stay of the Bankruptcy Code is deemed automatically modified and terminated as to the Lender solely with respect to the Property.[38] Additionally, the Interim Cash Collateral Order provides that the Chief Restructuring Officer or any party in interest may, for cause, file a motion to extend the Sale Deadline or continuation of the automatic stay.[39]

The Debtors wasted no time working toward a resolution of the disputes at

---

34 *Id.*

35 Docket No. 1; Case No. 26-51900-alt, Docket No. 1. The Court entered its *Order Granting Emergency Motion for Joint Administration* on July 20, 2026. Docket No. 24.

36 Docket No. 49.

37 *Id.* at 7, ¶ 7.

38 *Id.*

39 *Id.* at 8.

hand and the MAV debt. The Debtors received two cash purchase offers for the Property from Micah Bowen (and assigns): (1) $13,000,000, subject to the Court's granting the Debtors' request for free-and-clear relief (the "Higher Offer"); and (2) $10,000,000 with the Deed CC&Rs remaining in place (the "Lower Offer").[40] Both of the offers should satisfy the Debtors' outstanding indebtedness to MAV, but the Higher Offer would certainly provide a greater distribution for creditors of the bankruptcy estate.[41]

On August 12, 2026, the Debtors filed an *Emergency Motion for an Order (I) Approving Bid Procedures for Sale of the Debtors' Real Property, Free and Clear of All Liens, Claims, and Encumbrances; (II) Establishing Related Deadlines; (III) Scheduling a Final Sale and Auction Hearing; and (IV) Granting Related Relief*,[42] which the Court subsequently approved (the "Order").[43] The Order outlines the dates that govern the sale process, including briefing of the 11 U.S.C. § 363(f)(4) issue through the Motion and a preliminary hearing on the issue (the "Hearing") before the sale hearing set for September 28, 2026 (the "Sale and Auction Hearing").[44] At the Sale and Auction Hearing, the Debtors will present, for the Court's approval, the highest or otherwise best offers received.[45] The Motion, therefore, briefs the section 363(f)(4) issue and seeks approval of the related notice procedures described therein to facilitate the sale process.[46]

---

40 Docket No. 110 at 3, ¶ 4.

41 *Id.* at 6, ¶ 14.

42 Docket No. 85.

43 Docket No. 107.

44 *Id.* at 2–3.

45 *Id.*

46 Unless otherwise noted, all "section" references are to title 11 of the United States Code. Docket No. 110. On September 4, 2026, the Court entered its *Sua Sponte Order Regarding Hearing Set for September 9, 2026* (the "Sua Sponte Order"), where the Court requested "that the parties be prepared to address questions" regarding the undefined term "Heiser Hollow" in the Deed CC&Rs and whether other parties in interest were given notice of the Debtors' requested relief. Docket No. 124. In response to the Sua Sponte Order, Sun NG filed its *Supplemental Brief Regarding the Deed CC&Rs Nonwaiver Provision*, Docket No. 135, and its *First Supplemental Brief in Response to Debtors' Motion to Sell Property Free and Clear of the Heiser Hollow Covenant*, Docket No. 137, and the Debtors filed their *Supplemental Brief in Response to the Sua Sponte Order* on September 8, 2026, Docket No. 136. The Court has reviewed and considered all of the arguments made therein in resolving this matter.

## The Parties' Contentions

In the Motion, the Debtors seek to sell the Property free and clear of any interest held by any party in the Property by virtue of the restrictive covenants contained in the Deed CC&Rs because such interest is in "bona fide dispute."[47] Specifically, the Debtors argue that a bona fide dispute exists because the State Action is live, unresolved, and no court has ruled on the merits.[48] The Debtors assert that, under Texas law, the Deed CC&Rs have been abandoned because the planned residential development in the Heiser Hollow area never materialized.[49]

Additionally, the Debtors argue that under the changed-conditions doctrine, the benefited tract's conversion from a planned residential development to a commercial RV resort defeats the Deed CC&R's stated purpose.[50] Ultimately, the Debtors urge the Court to approve the sale of the Property, free and clear of the Deed CC&Rs, because section 363(f)(4) exists precisely to permit a sale to proceed notwithstanding an unresolved dispute over collateral or property rights, so that the asset's value is not lost to delay while the underlying dispute is litigated to conclusion.[51]

In its Response, Sun NG first contends that no bona fide dispute exists as to its interest in the Property because the Debtors' evidence supporting its abandonment, waiver, changed-conditions, and quasi-estoppel theories does not objectively support finding a bona fide dispute.[52] Sun NG argues that the Debtors "cannot bootstrap an isolated dispute over event scheduling into extinguishment" of

---

[47] 11 U.S.C. § 363(f)(4).

[48] Docket No. 110 at 16.

[49] *Id.* at 18, ¶ 39 ("[T]he Covenant's intended benefit — protecting a residential subdivision — has been rendered impossible by the complete failure of the Heiser Hollow development and the conversion of the benefited tract to a commercial use fundamentally at odds with the Covenant's residential purpose.").

[50] *Id.* at 19, ¶ 40. The Debtors contend that "[o]nly after Northgate-affiliated entities acquired the Debtors' secured debt and moved to foreclose on multiple occasions did Northgate begin attempting to assert 'significant rights' under the Covenant, doing so for ulterior, yet transparent, purposes as leverage in an unrelated debt dispute rather than protect any legitimate restrictive-covenant purpose." *Id.* at 20, ¶ 42. The Debtors also argue that, under a quasi-estoppel theory, Sun NG and Northgate are barred from enforcing the Deed CC&Rs. *Id.* at 20, ¶ 43.

[51] *Id.* at 21, ¶ 45.

[52] Docket No. 120 at 23–24.

its property interest.[53] Sun NG further argues that, even if a bona fide dispute exists, it is confined to the Deed CC&R's concert-night restriction.[54] Importantly, Sun NG raises an adequate protection issue pursuant to section 363(e) because it asserts that cash proceeds are not functionally equivalent to the bargained-for Deed CC&Rs.[55]

On September 4, 2026, this Court entered a Sua Sponte Order requesting that the Debtors clarify whether they intended to sell free and clear only of Sun NG's interest or if the Debtors were seeking relief against any party who may claim enforcement rights under the Deed CC&Rs.[56] If the latter, the Court asked for evidence that the Debtors served all parties in interest with the Motion.[57] In response, the Debtors filed a supplemental brief clarifying that "every successor in interest of the Heiser Hollow property has in fact received notice of the Sale Motion and the Debtors' intent to pursue a sale free and clear of the CC&Rs."[58]

At the Hearing, the Debtors reiterated that they seek to sell the Property free and clear of the Deed CC&Rs in their entirety and of any interest of any party who might assert an interest therein. In support of their Motion, the Debtors' CRO, Greg Milligan, and Korioth testified in support of the Debtors' case in chief.[59] Their

---

53 *Id.* at 25, ¶ 63.

54 *Id.* at 26.

55 *Id.* at 29, ¶ 81.

56 Docket No. 124.

57 The Court also asked for clarification as to Sun NG's standing because the Response referred to "Lot 3," but there was nothing on the record at that time defining "Lot 3." In Texas, a party has standing to enforce a restrictive covenant by showing that the restriction was intended to inure to their benefit. *Moseley v. Arnold*, 486 S.W.3d 656, 661 (Tex. App.—Texarkana 2016, no pet.) (citation modified). Anyone entitled to benefit under the express terms of the restrictive covenant may also enforce it. *Id.* Texas courts examine instruments in their entirety and consider every clause to determine whether a party has standing to enforce a restrictive covenant. *Id.* at 662–63. When the Deed CC&Rs are read in their entirety, it is clear that the restrictions are meant to benefit the purchasers of any part of the Property or Heiser Hollow, and that Sun NG is meant to be a beneficiary of the enforcement of the Deed CC&Rs. The preamble also states that the Deed CC&Rs' purpose is to benefit the Property, all Covered Lots, and the neighboring property known as Heiser Hollow. It expresses the parties' intent that the Deed CC&Rs run with the land and bind all parties "having or acquiring any right, title, or interest in all or any part of the Property of Heiser Hollow, and their heirs, successors, and assigns." Last, Sun NG also appears to qualify as an "Enforcing Party," as defined by the Deed CC&Rs because it owns Lot 3.

58 Docket No. 136, ¶ 1. The certificate of service for the Motion confirms that the Debtor did serve the three parties that it contends may have an "interest" in the disputed Deed CC&Rs: Whitewater Acres, LLC, 306 Partners Investments, LLC, and Sun NG. Docket No. 110 at 29.

59 The Court has weighed the credibility of the three witnesses: the Debtor's CRO Greg Milligan, William Korioth, and Zachary Bossenbroeck. The Court accepts the CRO's testimony as credible. The

testimony focused almost exclusively on the Saturday and holiday concert restriction in Section 3.02 of the Deed CC&Rs and how, in their opinion, Kona had violated that restriction to such an extent that the Deed CC&Rs were unenforceable. On cross-examination, Korioth conceded that Kona's only nonconforming conduct under the Deed CC&Rs was the concert-day restriction under Section 3.02.[60] Korioth went so far as to say that he doesn't "disagree with a lot of the things that are in" the Deed CC&Rs and "[t]here's things that make total sense."[61]

Zachary Bossenbroeck, a manager of Sun NG, testified in support of Sun NG's opposition to the Motion.[62] Bossenbroeck testified that, since acquiring Lot 3, Sun NG has consistently taken the position that, as an owner of a Covered Lot, it has the right to enforce the Deed CC&Rs.[63] According to Bossenbroeck, Camp Fimfo is a family-friendly RV resort; if Kona (or any purchaser) could hold concerts 365 days a year, it would affect Camp Fimfo's value and attractiveness.[64] Bossenbroeck cited concerns about increased traffic on Highway 306, creating access issues to Camp Fimfo, increased garbage and sanitary station needs, and increased safety concerns from inebriated concert attendees.[65] Bossenbroeck further stated that Northgate invested over $100 million in developing Camp Fimfo and relies on the Deed CC&Rs to protect that investment.[66]

During closing arguments, the Debtors relied on all of the witnesses' testimony, which demonstrated the parties' disagreement over the enforceability of the Deed CC&Rs, and the State Action itself as sufficient evidence that the enforcement of the Deed CC&Rs is in "bona fide dispute." The Debtors also attempted to walk back their argument, stating that they only seek to sell the Property free and

---

Court finds that Korioth was at times credible, but he could not recall specifics during testimony about key facts. The Court notes that Bossenbroeck is a licensed attorney and generally testified credibly, based on his personal knowledge, about key facts.

60 Hearing Audio at 12:24:10–12:25:01 CDT.

61 *Id.* at 12:25:50–12:27:00 CDT.

62 *Id.* at 1:22:40–1:23:42 CDT (management provided through his role at the parent company, Northgate Holdings).

63 *Id.* at 1:24:05–1:24:53 CDT; 1:27:35–1:27:53 CDT.

64 *Id.* at 1:38:00–1:39:00 CDT.

65 *Id.*; *see also id.* at 1:39:45–1:40:02 CDT.

66 *Id.* at 1:34:05–1:34:53 CDT.

clear of the concert-date restriction set forth in Section 3.02 of the Deed CC&Rs. That is not to say the Debtors abandoned their State Action arguments or their assertion that the Deed CC&Rs are entirely unenforceable. Instead, it appears to recognize that the sole portion of the Deed CC&Rs for which the Debtors produced evidence of a possible "bona fide dispute" was the concert-date restriction in Section 3.02. In response, Sun NG's counsel was adamant that the entirety of the Deed CC&Rs are valid and enforceable and that any dispute was not "bona fide."

## Discussion

In considering the arguments made by the parties, the Court is mindful that:

> One of the central precepts of bankruptcy law is that "a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest. Further, a trustee takes the property subject to the same restrictions that existed at the commencement of the case. To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate."[67]

In juxtaposition to that general maxim, section 363(f) of the Bankruptcy Code provides extraordinary relief to a debtor. It allows a debtor to seek an exception to that general maxim and, if one of a few limited circumstances is met, to sell a arguably greater interest in the property than what the debtor could sell outside of bankruptcy.[68] In considering such extraordinary relief, the Court must balance the goal of maximizing value for the estate against the potential prejudice to other interest holders in the property. With these twin goals in mind, and after consideration of the record, the Court finds that the Debtors' request for extraordinary relief under section 363(f)(4) should be denied.

When this case was filed, Kona held legal title to the Property subject to

---

[67] *Weinman v. Graves* (*In re Graves*), 609 F.3d 1153, 1156 (10th Cir. 2010) (quoting *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992)).

[68] *See, e.g., Newco Energy v. Energytec, Inc. (In re Energytec, Inc.)*, 739 F.3d 215, 226 (5th Cir. 2013) (finding an interest in property was established and remanding for the bankruptcy court to decide whether the debtor met its burden under § 363(f)(5)); *see also*, 11 U.S.C. § 363(h) (permitting the trustee to sell not only an estate's interest but a co-owner's interest in property if certain conditions are met).

numerous use restrictions, including the Deed CC&Rs. When the Grantor transferred the Property to Kona, it held back numerous valuable rights: the right to further develop and build on the Property, the right to engage in drilling, and the right to erect signage without approval, to name a few. Now the Debtors seek permission to sell more than they had on the petition date — the Property free and clear of the Deed CC&Rs.

Section 363 of the Bankruptcy Code allows a debtor to do this and to sell property of the estate outside the ordinary course of business "only to the extent not inconsistent with any relief granted under subsections (c), (d), (e), or (f) of section 362."[69] And as relevant to this case, under subsection (f), a debtor may sell property of the estate "free and clear of any interest in such property of an entity other than the estate, only if" one of several conditions is met, including if "such interest is in bona fide dispute."[70]

In this case, the Debtors argue that they may sell the Property "free and clear of all liens, claims, interests, and encumbrances, including restrictive covenants currently burdening the land,"[71] including the Deed CC&Rs, because the validity of the Deed CC&Rs is subject to a "bona fide dispute." Sun NG agrees that the Deed CC&Rs are an "'interest' protected by § 363(f)" but argues that such interest cannot be extinguished under section 363(f)(4).[72]

---

69 11 U.S.C. § 363(b), (d)(2).

70 11 U.S.C. § 363(f).

71 Docket No. 110 at 2, ¶ 1. Importantly, although the Debtors broadly describe the relief sought, any relief granted is limited to only those parties with notice. It is unclear if any other third party holds an "interest" in enforcing the Deed CC&Rs at issue. If such a party exists and did not receive notice of the Debtors' request to sell the Property free and clear of such interest, this Court's order will not bind that party. *See In re Hull Org., LLC*, No. 23-32983, 2026 WL 2085776, at *15 (Bankr. W.D. Ken. July 17, 2026) (finding a sale order void as to the party who did not receive notice). Furthermore, the Court does not interpret the Sale Motion as seeking a sale "free and clear" of *all* interests, such as utility easements and certain oil and gas rights that may be of record for the Property. To sell free and clear of an interest, the Court needs adequate notice of the exact interest affected. *Koepp v. Holland*, 688 F. Supp. 2d 65, 92 (N.D.N.Y. 2010) (explaining that unless specific relief from an easement is sought, "'Free and clear' should be interpreted as speaking of interests against the property, such as liens or mortgages, which now attach to the proceeds of the sale. Therefore, the order to sell 'free and clear' has no affect on the dedication of the road and the storm drain, which are easements that run with the land.").

72 Docket No. 120 at 4, ¶ 10.

As a threshold matter, the Court finds that restrictive covenants, like the Deed CC&Rs, are an "interest" that is subject to subsection 363(f)(4). "Property interests are created and defined by state law."[73] In *Energytec*, the Fifth Circuit held that, in Texas, a covenant running with the land is an "interest" in property subject to § 363(f)(5).[74] In that case, the bankruptcy court approved a section 363(f) sale of the debtor's gas pipeline system, purportedly free and clear of the grantee's contractual right to transportation fees related to the pipeline.[75] The district court affirmed the sale, and the Fifth Circuit vacated.[76] Under Texas law, the fee obligation ran with the land, making it a protected "interest" in property for section 363(f).[77] The Fifth Circuit remanded the case for the bankruptcy court to determine whether the debtor satisfied subsection (f)(5).[78] But the reasoning on the threshold question of whether the covenant ran with the land was not tied to one subsection.[79]

The Court therefore finds *Energytec* persuasive in that, under Texas law, covenants running with the land are the kind of "interest" in property subject to *all* the subsections of section 363(f).[80] Furthermore, there is no dispute in this case that the Deed CC&Rs are, in fact, restrictive covenants that "run with the land." The true matter at issue in this case is whether the Deed CC&Rs are in "bona fide dispute."

## I. Bona Fide Dispute

Courts in this Circuit define a "bona fide dispute" as "when there is an objective basis for a factual or legal dispute as to the validity of the asserted interest."[81] "[T]his standard does not require the court to *resolve* the underlying dispute, just to

---

73 *Butner v. United States*, 440 U.S. 48, 54 (1979).

74 *In re Energytec, Inc.*, 739 F.3d at 225–26.

75 *Id.* at 217.

76 *Id.*

77 *Id.* at 226.

78 *Id.*

79 *Id.* at 225.

80 Both the Debtors and Sun NG apply the analytical framework from *Energytec* and agree that the Deed CC&Rs run with the land and qualify as an "interest" in the Property subject to section 363. *Compare* Docket No. 110 at 13, *with* Docket No. 120 at 16.

81 *In re Patriot Place, Ltd.*, 486 B.R. 773, 815 (Bankr. W.D. Tex. 2013) (collecting cases); *see also Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 221 (5th Cir. 1993) (holding that a bona fide dispute for § 303(b)(1) exists if there is an objective basis for a factual or legal dispute as to the validity of a debt).

determine its *existence*."[82] The objective-basis inquiry requires the Court to examine the facts and legal theory that support the claim:

> This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists.[83]

Therefore, to determine whether a bona fide dispute exists, the Court must ask whether there is an objective basis, either in law or fact, for disputing the validity of Sun NG's asserted interest.[84] The Court is not required to accept, *without scrutiny*, that a bona fide dispute exists.[85]

The Debtors' request for declaratory relief in the State Action seeks an order declaring the Deed CC&Rs are wholly unenforceable and no longer burden the Property.[86] For purposes of the proposed sale, the Debtors argued that the State Action meets their burden of proof to show that the Deed CC&Rs are in bona fide dispute. Sun NG responds that such a standard is too low and would incentivize parties to file lawsuits on the eve of bankruptcy to manufacture a "bona fide dispute" and sell property to the detriment of legitimate interest holders. Sun NG further asserts that there is insufficient evidence to establish that Kona can prove any of its theories that the Deed CC&Rs are no longer enforceable and thereby in "bona fide dispute." It appears that not only do the parties strongly disagree regarding the merits of the State Action, but they also dispute how this Court should apply the test of whether there is a "bona fide dispute" at all.

The objective-basis standard governing the bona fide dispute inquiry did not

---

[82] *Union Planters Bank, N.A. v. Burns (In re Gaylord Grain L.L.C.)*, 306 B.R. 624, 627 (B.A.P. 8th Cir. 2004) (emphases added) (citation omitted). An adversary proceeding is not required for the Court to make this determination. *See In re Royal Alice Props., LLC*, 637 B.R. 465, 481–82 (Bankr. E.D. La. 2021) (finding a bona fide dispute for a § 363(f)(4) sale).

[83] *In re Sims*, 994 F.2d at 221.

[84] *Id.*; *see also Credit Union Liquidity Servs., L.L.C. v. Green Hills Dev. Co., L.L.C. (In re Green Hills Dev. Co., L.L.C.)*, 741 F.3d 651, 658 (5th Cir. 2014) (reaffirming this objective basis for either a factual or a legal dispute).

[85] *See Bona Fide*, Black's Law Dictionary (12th ed. 2024) ("Made in good faith" or "Sincere; genuine").

[86] Docket No. 132, Ex. 4 at 14, ¶ 37.

originate in the context of a section 363(f)(4) sale. The Eighth Circuit first articulated the standard in *Rimell*,[87] and the Fifth Circuit adopted it in *Sims* two years later.[88] Both cases were decided under section 303(b), which requires petitioning creditors in an involuntary bankruptcy to hold claims that are not the "subject of a bona fide dispute."[89] Little case law addresses the precise "objective basis" standard for section 363(f)(4)'s bona fide dispute inquiry, and even less so in the area of restrictive covenants. Some courts decline to "quibble" with the standard,[90] and other courts apply "a wide range of evidentiary requirements that must be met before a court may find that a bona fide dispute exists."[91]

For example, in *Collins*, the court opined on the objective standard, explaining that "[c]ourts utilizing this definition have held the parties to an evidentiary standard; evidence must be provided to show factual grounds that there is an 'objective basis' for the dispute."[92] That articulation of the objective standard appears to require more than merely pleading a plausible claim with the presumption that all well-pled facts are true. Instead, the moving party must present some evidence in support of their legal claim. Pleading a claim merely challenging an interest is not sufficient to create a "bona fide dispute."

In *Williamsburg Boutique, LLC*, the court examined whether the sale of an easement was subject to a "bona fide dispute" under section 363(f)(4) and what evidence was sufficient to establish such dispute.[93] In that case, Bankwell made a credit bid to purchase certain real property from the debtor along with its rights as the dominant estate to an easement for customer parking on nearby real property owned by Keap Street. Although its bid made clear that Bankwell's bid included the purchase of both the debtor's land and the easement, the debtor objected to the form of sale order, arguing that the easement was "not the type of asset that may be sold

---

[87] *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir. 1991).
[88] *In re Sims*, 994 F.2d at 221.
[89] 11 U.S.C. § 303(b).
[90] *E.g.*, *In re Worcester Country Club Acres, LLC*, 655 B.R. 41, 45 (Bankr. D. Mass. 2023).
[91] *In re Robotic Vision Sys., Inc.*, 322 B.R. 502, 506 (Bankr. D.N.H. 2005) (collecting cases).
[92] *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995).
[93] *In re Williamsburg Boutique, LLC*, 663 B.R. 217, 225–26 (Bankr. S.D.N.Y. 2024).

free and clear of third-party interests under section 363(f)."[94] Keap Street, the servient estate, appeared to oppose the sale, asserting that Bankwell could not purchase the easement without curing the $2.6 million owed by the debtor and paying future consideration for maintenance and upkeep of the parking spaces.[95] Bankwell argued that no consideration was due because the easement itself declared that consideration was paid for the easement.[96]

After determining that the easement was property of the estate and could be sold pursuant to section 363(b), the court turned to whether the easement could be sold "free and clear" of Keap Street's claim for payment of $2.6 million owed for fees related to the easement under section 363(f)(4).[97] The court found that Keap Street's claim was subject to a "bona fide dispute" by weighing the evidence presented by the parties.[98] As to Bankwell, the court noted that it relied on the four corners of the easement declaration itself, which plainly stated that consideration had been paid, coupled with applicable state law that provided that a grantor is generally estopped by a consideration clause from asserting that additional payment is due for use of an easement.[99] On the other hand, Keap Street provided "little support" for its claim that it was owed additional consideration, other than arguing that the easement declaration was ambiguous.[100]

In short, Bankwell met its burden to prove that a bona fide dispute existed by relying on the easement declaration itself and applying settled state law, thereby satisfying the objective standard of section 363(f)(4). Although that appears, at first blush, to be a relatively low evidentiary standard, the better interpretation is that the court gave the appropriate deference to the plain meaning of the easement declaration itself and gave little weight to an alleged ambiguity when there was little

---

94 *Id.* at 222.
95 *Id.* at 223.
96 *Id.*
97 *Id.* at 225–226.
98 *Id.*
99 *Id.* at 226.
100 *Id.* at 225–26.

to no evidence to support an interpretation contrary to that plain meaning.[101]

In *Robotic Vision Systems*, the court expressly asked whether the factual allegations and legal theories set forth by the debtor were "sufficient to state a disputed claim for which relief may be granted."[102] Yet, in applying what mirrors a pleading-stage standard, the court still examined the record rather than merely testing the sufficiency of the allegations under the applicable legal standard.[103] Indeed, the court methodically examined the disputes between the parties to determine whether the movant, which sought to sell certain property free and clear of an allegedly disputed third-party interest, could establish a factual, evidentiary basis for its legal claims.

The court in *Robotic Visions* also offered a case-by-case framework as an alternative to setting a single fixed evidentiary threshold:

> It appears the evidentiary record required to support a finding of a bona fide dispute for purposes of § 363(f) depends upon a case-by-case consideration of: (i) the procedural posture of the case, (ii) the need to expedite the sale, and (iii) the nature of the basis for determining that a dispute exists.[104]

In summary, the case law addressing section 363(f)(4) indicates that a movant must do more than plead a claim that places an interest in property in dispute. To qualify as a "bona fide" dispute, the movant's claim must be supported by evidence. The extent of the evidence required will be highly case-specific. At the same time, the Court should give appropriate deference, in the context of recorded documents (such as restrictive covenants and easements), to state law principles governing their enforcement and interpretation.

Given the case law above, and specifically the factors outlined in *Robotic Visions*, determining whether a bona fide dispute exists regarding the enforceability of the Deed CC&Rs in this case requires more than the mere existence of the State

---

101 *See, e.g.*, *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 279 (Tex. 2018) ("A paramount concern when construing covenants is giving effect to the objective intent of the drafters of the restrictive covenant as it is reflected in the language chosen.").

102 *In re Robotic Vision Sys., Inc.*, 322 B.R. at 506

103 *Id.* at 508–09.

104 *Id.* at 506.

Action. First, regarding the procedural posture of this case, although the Debtors are certainly operating on an accelerated timeline, they knew of this dispute before the filing of the bankruptcy and had adequate time to develop the factual record. The issue is fully briefed, and the record includes years of correspondence, recorded property records (including the Deed CC&Rs), and a detailed timeline of events. Because a sufficient evidentiary record already exists, the Court has no reason to apply the lenient, allegations-are-enough standard that the Debtors argue for.

Second, the bid procedures and sale deadlines may justify an expeditious ruling in this case, but it does not justify disregarding a developed record. Third, and most importantly, the Debtors' theories require examining the facts to determine whether an objective basis for a bona fide dispute exists, not merely accepting allegations that one exists. The Fifth Circuit's articulation makes this clear: there must be an objective basis for "either a factual or legal dispute."[105] That standard requires a determination that a factual dispute is objectively supported by evidence, just as it looks to the law to determine whether the law objectively supports a legal contention. In other words, the Debtors' legal theories cannot be deemed a "bona fide" dispute without sufficient evidentiary support.[106]

Having fully analyzed the applicable standard, the Court now turns to the Debtors' challenges to the enforceability of the Deed CC&Rs. Examining the Debtors' asserted legal theories—waiver and abandonment, quasi-estoppel, and changed conditions—to "ascertain whether an objective legal basis for the dispute exists," and considering whether such legal arguments have sufficient evidentiary support,[107] the Court finds that the Debtors do not establish a bona fide dispute as to the enforceability of the Deed CC&Rs.

---

[105] *In re Sims*, 994 F.2d at 221.

[106] *See id.* (citation modified) ("[T]he determination as to whether a dispute is bona fide will often depend upon an assessment of witnesses' credibility and other factual considerations.").

[107] *In re Sims*, 994 F.2d at 221 (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991)); Docket No. 132, Ex. 4 at 14, ¶ 37.

*A. The Debtors do not establish an objective legal or factual basis for waiver or abandonment of the Deed CC&Rs in their entirety.*

The first two theories that the Debtors assert to establish a "bona fide dispute" are waiver and abandonment under Texas law.[108] In Texas, the law regarding waiver and abandonment converges in the context of restrictive covenants. "Waiver by abandonment of a restrictive covenant can be found when lot owners acquiesce in substantial violations within a restricted area, and that acquiescence can amount to either an abandonment of the covenant or a waiver of the right to enforce it."[109] The violations must be "so extensive and material as to reasonably lead to the conclusion that the restrictions had been abandoned."[110] A violation "so trivial in character," however, "does not operate as a waiver of their right to enforce the covenant against business or commercial development, or as an abandonment of the covenant."[111] To determine waiver of a deed restriction, courts must consider (1) the frequency, nature, and severity of the existing violations; (2) prior enforcement of the restrictions; and (3) the possibility of a substantial realization of the benefits of the restriction despite the violations.[112]

Further, in Texas, a nonwaiver provision precludes a finding that *specific*

---

[108] Although the Court must follow Fifth Circuit precedent in determining whether there is a bona fide dispute under section 363(f)(4), the Debtors assert theories under Texas law to support their position. Accordingly, the Court will look to Texas law to determine whether the Debtors establish an objective legal basis for a bona fide dispute.

[109] *Baker v. Meadows*, No. 10-25-00042, 2026 WL 1983418, at *2 (Tex. App.—Waco July 9, 2026, no pet.) (mem. op.) (citing *Cowling v. Colligan*, 312 S.W.2d 943, 945 (Tex. 1958)). "A court may refuse to enforce a deed restriction because of the acquiescence by the landowners in violations so substantial that the acquiescence amounts to an abandonment of the restriction." *Architectural Control Comm. of Oak Terrace Ests v. McCormick*, No. 09-10-00495, 2011 WL 5588733, at *1 (Tex. App.—Beaumont 2011, no pet.) (mem. op.) (citing *Cowling*, 312 S.W.2d at 945). In the context of restrictive covenants, "the concepts of abandonment and waiver go hand in hand" because "a finding that a restriction has been abandoned is essentially the same, and must have the same evidentiary support, as a finding that the right to enforce the covenant has been waived." *Musgrove v. Westridge St. Partners I, LLC*, No. 2-07-281, 2009 WL 976010, at *3 (Tex. App.—Ft. Worth April 9, 2009, pet. denied) (mem. op.) (collecting cases).

[110] *Pebble Beach Prop. Owners' Ass'n v. Sherer*, 2 S.W.3d 283, 290 (Tex. App.—San Antonio 1999, pet. denied) (citing *Dempsey v. Apache Shores Prop. Owners Ass'n*, 737 S.W.2d 589, 595 (Tex. App.—Austin 1987, no writ)).

[111] *Cowling*, 312 S.W.2d at 462.

[112] *McCormick*, 2011 WL 5588733, at *1 (citing *Finkelstein v. Southampton Civic Club*, 675 S.W.2d 271, 278 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)).

restrictions are abandoned.[113] It is well-settled that "equity abhors forfeiture."[114] Consistent with that rule, Texas law instructs that a nonwaiver provision is ineffective "only if the party seeking to avoid the covenants can demonstrate 'a *complete abandonment of the entire set* of restrictions, including the nonwaiver provision.'"[115] A party may demonstrate complete abandonment with "evidence of violations so pervasive that they have destroyed the fundamental character of the neighborhood."[116] In other words, the party seeking to enforce the nonwaiver provision must have "intentionally engaged in conduct inconsistent with claiming the right to enforce the nonwaiver."[117]

In this case, there is insufficient evidence to establish that the Debtors' waiver-by-abandonment argument creates a bona fide dispute regarding the validity of the Deed CC&Rs. First, the Deed CC&Rs contain a nonwaiver provision: "Failure of any Enforcing Party to enforce any covenant and restriction in this Deed will not be deemed a waiver of the right of the Enforcing Party from doing so in the future."[118]

---

113 *Vance v. Popkowski*, 534 S.W.3d 474, 479–81 (Tex. App. Houston [1st Dist.], 2017, pet. denied) (collecting cases). "If a party who had agreed to be bound by the restrictive covenants, including the nonwaiver provision, were able to avoid the provision by simply proving that a particular restrictive covenant had been abandoned or waived, then the nonwaiver provision would be rendered effectively meaningless." *Id.*; *see also Hicks Airfield Pilots Ass'n v. Brunson*, No. 02-25-00177, 2026 WL 1700499, at *18 (Tex. App.—Ft. Worth June 11, 2026, no pet.) (mem. op.) ("Two areas of law converge in our analysis of this issue—first, the law concerning whether a restrictive covenant may be abandoned, and second, the law concerning whether a nonwaiver clause may be waived.").

114 *Jones v. N.Y. Guar. & Indem. Co.*, 101 U.S. 622, 628 (1879) ("A court of equity abhors forfeitures, and will not lend its aid to enforce them."); *cf. Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 429 (Tex. 2008) (instructing courts should resolve doubts in favor of a covenant so that forfeiture is avoided).

115 *Sides v. Saliga*, No. 03-17-00732, 2019 WL 2529551, at *15 (Tex. App.—Austin June 20, 2019, no pet.) (mem. op.) (emphasis added) (quoting *Vance*, 534 S.W.3d at 479–80)).

116 *Vance*, 534 S.W.3d at 480.

117 *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017); *see EWB-I, LLC v. PlazAmericas Mall Tex., LLC*, 527 S.W.3d 447, 468 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("[I]n no event can waiver be premised on the same conduct the parties specifically agreed would not give rise to a waiver of contract rights."). The Deed CC&Rs' nonwaiver provision addresses waivers premised on inaction—the failure to enforce the Deed CC&Rs; it safeguards each Enforcing Party from a finding of waiver based on inaction in the face of restriction violations. "[A] nonwaiver-by-inaction clause is a bargained-for agreement that the nonbreaching party can delay acting without forfeiting its right to act later." *Dallas Sports Grp., LLC v. DSE Hockey Club, L.P.*, 2026 Tex. Bus. 15, ¶ 132, 735 S.W.3d 759, 787 (1st Div. 2026) (finding consent to variations from the agreement did not amount to waiver of the right to redemption because the party expressly preserved their rights).

118 Docket No. 126, Ex. A.

The Debtors failed to present any evidence that any party, including Sun NG, ever took any action to abandon or waive the nonwaiver provision.

Second, the Debtors failed to present any evidence of violations of the Deed CC&Rs outside of the concert-date restriction of Section 3.02. Although the Debtors presented evidence that Kona regularly violated that provision by holding concerts on days other than Saturday or a designated holiday, that alone does not come close to what Texas law requires to prove abandonment. The Debtors' evidence could arguably support a waiver or abandonment of the concert-date restriction alone if the nonwaiver provision did not exist,[119] but the Debtors do not address the other restrictions encompassed in Section 3.02 of the Deed CC&Rs. Last, Sun NG presented evidence that, for 2021, 2023, 2024, 2025, and 2026, Sun NG consented to the Debtors' nonconforming concert dates and explicitly reserved its rights under the Deed CC&Rs. Such consent to nonconforming conduct does not amount to a waiver under Texas law.

The Debtors have failed to present sufficient evidence that Sun NG or any other party in interest waived or abandoned the Deed CC&Rs in their entirety. The Court declines to find a bona fide dispute exists based on violation of an isolated restriction, without further evidence of waiver of other provisions of the Deed CC&Rs.

*B. The Debtors do not establish an objective legal or factual basis for quasi-estoppel.*

Alternatively, the Debtors argue that quasi-estoppel should bar Sun NG from enforcing the CC&Rs for two reasons. First, the Debtors argue that by actively marketing concerts that occurred on nonconforming dates, Sun NG should be estopped from now challenging the enforceability of the Deed CC&Rs. Second, the Debtors assert that Sun NG took an interest in enforcing the Deed CC&Rs only after a related entity, MAV, acquired the Debtors' secured debt.

The Debtors fail to present sufficient evidence to support a quasi-estoppel claim that would rise to the level of a bona fide dispute. In Texas, "Quasi-estoppel

---

[119] *See Cliffhanger Devs., LLC v. Lubitz*, No. 03-24-00555, 2026 WL 2355031, at *7 (Tex. App.—Austin Aug. 14, 2026, no pet. h.) (mem. op.) (finding the percentage rate of violations insufficient to support waiver and abandonment of the restrictions).

precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken."[120] Courts apply the doctrine when "it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."[121]

As a preliminary matter, the Debtors cannot extrapolate Sun NG's alleged conduct to serve as a legal basis to invalidate the Deed CC&Rs as to all dominant estate interest holders. Similarly, the Debtor's reliance on MAV's conduct equally misses the mark. To the extent the Debtors seek to rely on quasi-estoppel to establish a bona fide dispute, it is limited to Sun NG's conduct alone. Further, the Debtors' quasi-estoppel theory rests on Sun NG's promotion of nonconforming concert dates. Sun NG does not deny promoting such concerts but showed it had already agreed to the nonconforming dates while reserving its right under the Deed CC&Rs to oppose future nonconforming dates.[122] It appears that Sun NG has always taken the position that the Deed CC&Rs were enforceable; its promotion of, and possible profit from, nonconforming concert dates is not inconsistent with that position.

As set forth above, quasi-estoppel requires an inconsistent prior position. The Court declines to find a bona fide dispute based on quasi-estoppel without any evidence of a prior inconsistent position taken by Sun NG.

*C. The Debtors do not establish an objective legal or factual basis for the changed-conditions doctrine.*

The Debtors argue that planned residential subdivision in Heiser Hollow never materialized, the original developer's project failed, and the surrounding land was redeveloped, in part, as Camp Fimfo. On that basis, the Debtors contend that the Deed CC&Rs' alleged residential purpose was defeated by changed conditions and that it is no longer possible to secure the benefits the Deed CC&Rs were intended to protect.

A restrictive covenant may become unenforceable in Texas when there has

---

120 *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 336 (Tex. 2020) (quoting *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)).

121 *Id.* (quoting *Lopez*, 22 S.W.3d at 864).

122 Docket No. 126, Exs. F, G, H, L.

been a change of conditions, since the creation of the restriction, "in the restricted area or surrounding it that is no longer possible to secure in a substantial degree the benefits sought to be realized through" the restriction.[123] Unsuitability is not enough; "courts must balance the harm to the restricted owner against the equities favoring the lot owners who, having acquired their property on the strength of the restriction, wish to preserve the character of the area."[124] The changed-conditions doctrine seeks to prevent "obsolete servitudes from interfering with desirable uses of land."[125]

The Debtors' changed-conditions argument hinges on the Deed CC&R's "residential" purpose, asserting that Heiser Hollow's failed residential subdivision and its replacement by Camp Fimfo defeated that purpose "at its root."[126] But the Deed's purpose clause does not use the word "residential" at all;[127] it states that "the covenants and restrictions are established for the purpose of protecting the value, attractiveness, and desirability of the Property and all of the Covered Lots, as well as the neighboring property known as 'Heiser Hollow.'"[128] The only instance the word "residential" appears in the Deed CC&Rs is Section 2.03, which uses "residential communities" solely as a maintenance-quality comparator. In fact, Section 3.01 of the Deed CC&Rs *prohibits* single- or multi-family homes on any Lot.[129]

Nevertheless, the shift from the alleged planned residential use to Sun NG's commercial RV resort does not diminish the purpose and effect of the Deed CC&Rs. Because the recited purpose of the Deed CC&Rs is protecting "value, attractiveness,

---

123 *EIS Dev. II, LLC v. Buena Vista Area Ass'n*, 715 S.W.3d 689, 700 (Tex. 2025) (quoting *Cowling*, 312 S.W.2d at 945); *see also* Restatement (Third) of Prop. (Servitudes) § 7.10 (Am. L. Inst. 2000) ("When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable . . . a court may terminate the servitude.").

124 *EIS Dev. II*, 715 S.W.3d at 700 (citation modified).

125 *Id.* at 701 (citation modified).

126 Docket No. 110 at 18, ¶ 39.

127 "[W]hen interpreting a deed restriction, we focus on 'the objective intent of the [restriction's] *drafters*' as 'reflected in the language chosen.'" *EIS Dev. II*, 715 S.W.3d at 701 (alteration in original) (quoting *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 280 (Tex. 2018)).

128 Docket No. 132, Ex. 6 at 2.

129 Docket No. 110, Ex. B at 4 ("No permanent habitation will be allowed and one party may not lease a unit for more than thirty (30) days consecutively"). Section 3.01 applies to a "Lot," which is defined as "any one of the Covered Lots," which includes every subdivided lot.

and desirability," the relevant question is whether that purpose remains substantially realizable. Camp Fimfo has an interest in the restrictions on additional concert nights, late-night noise, uncontrolled traffic, and unauthorized new construction (to name only a few of the benefits provided by the Deed CC&Rs). Again, the Debtors focus their changed-conditions theory only on the amphitheater restrictions in Section 3.02 of the Deed CC&Rs and offer no legal or factual basis for the Court to divest Sun NG of the other restrictions, such as those outlined in Sections 3.05, 3.09, and 3.08. Accordingly, the Court finds that the Debtors fail to establish an objective legal or factual basis that it is impossible to secure, to a substantial degree, the benefits sought to be realized through the Deed CC&Rs.

## II. Adequate Protection

Even if the Debtors are entitled to relief under section 363(f)(4), there is an independent basis to deny the Motion under section 363(e).[130] Section 363(e) requires the Court, on request of an entity with an interest in property to be sold, to prohibit or condition the sale as necessary to provide adequate protection of such interest.[131] Under section 361, when adequate protection is required under section 363, such adequate protection may be provided by (1) periodic cash payments, (2) additional or replacement liens, or (3) "such other relief" that "will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."[132] To determine the form that adequate protection may take, courts consider the nature of the interest in the property, the potential harm as a result of the property's diminution of value, and the method of protection.[133]

The Debtors direct the Court to *TOUSA*, arguing that the bankruptcy court in

---

[130] Although the Debtors argue that Sun NG has not requested adequate protection, Sun NG explicitly invokes section 363(e), requesting that the Court, in the alternative to outright denial of the Motion, condition or preserve the Deed CC&Rs pending final adjudication of the State Action. Docket No. 120 at 29–30.

[131] 11 U.S.C. § 363(e).

[132] 11 U.S.C. § 361. Section 361's list of ways to provide "adequate protection" is not limited to the forms explicitly listed. 11 U.S.C. § 102(5).

[133] *Memphis–Shelby Cnty. Airport Auth. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 783 F.2d 1283, 1286 (5th Cir. 1986) (citing *In re Alyucan Interstate Corp.*, 12 B.R. 803, 806–09 (Bankr. D. Utah 1981)).

that case authorized a sale free and clear of a restrictive covenant without providing adequate protection because it found the covenant "unenforceable due to changed conditions."[134] Although the debtor in *TOUSA* argued both subsections 363(f)(1) and (f)(4) as alternative bases for its proposed sale, the court did not explicitly identify which subsection ultimately controlled its ruling.[135] The court's analysis proceeded directly into Florida property law and concluded that the restrictive covenant was an unenforceable restraint on alienation.[136] And once the court determined that the restriction was unenforceable under Florida law, the debtor's proposed sale was justified without any need to reach section 363(f)(4)'s bona fide dispute inquiry.[137] *TOUSA* did not raise an adequate protection issue because nothing remained to protect after the court determined the covenant was unenforceable under state law.

At the Hearing, the Debtors asserted that, if this Court conditions the sale on adequately protecting Sun NG's interest, a lien on sale proceeds would be sufficient. Sun NG argues that monetary relief would be insufficient to protect its interest in the Deed CC&Rs. Sun NG asserts that "[a] replacement lien on sale proceeds would protect a payment right; [but] it cannot protect Lot 3 and the adjoining resort from prohibited uses of neighboring land."[138] The Court agrees with Sun NG.

Here, the Court is not determining whether the Deed CC&Rs are enforceable. That is a matter to be resolved in the State Action or an adversary proceeding under Bankruptcy Rule 7001(2).[139] Sun NG's "interest" is not a lien securing repayment of money, where periodic payments or replacement liens on sale proceeds are a sufficient substitute. The "indubitable equivalent" of Sun NG's interest is maintaining the status quo of the Deed CC&Rs, whose value lies in the actual restraint of future conduct on the Property. That interest cannot be adequately

---

134 Docket No. 121 at 9, ¶ 16 (citing *In re TOUSA, Inc.*, 393 B.R. 920 (Bankr. S.D. Fla. 2008)).

135 *In re TOUSA, Inc.*, Case No. 08-10928-JKO, Docket No. 1437 (Bankr. S.D. Fla. July 21, 2008); *In re TOUSA, Inc.*, 393 B.R. at 922–23.

136 *In re TOUSA, Inc.*, 393 B.R. at 923.

137 *Id.*; *see In re Patriot Place, Ltd.*, 486 B.R. at 814–15 ("[I]f a debtor . . . can satisfy one of the five different conditions set forth in the subsections of § 363(f), a debtor can sell its property . . . free and clear of all interests of a third party . . . .").

138 Docket No. 120 at 29, ¶ 80.

139 Fed. R. Bankr. P. 7001(2).

protected if the Court grants the sale of the Property free and clear of the Deed CC&Rs. Indeed, a sale free and clear of the Deed CC&Rs would arguably moot any equitable relief Sun NG could seek (such as future enforcement of the Deed CC&Rs) and limit its remedies to monetary damages alone. That not only drastically inadequately protects Sun NG's interest in the Deed CC&Rs but potentially exposes the bankruptcy estate to unknown monetary damages.

Accordingly, the Court agrees with Sun NG that any sale of the Property shall be conditioned upon resolution of the validity and enforcement of the Deed CC&Rs through the State Action or other appropriate proceeding, thereby adequately protecting Sun NG's interest in the Property. This leaves the buyer to decide whether to continue pursuing the State Action or resolve the dispute regarding the Deed CC&Rs with Sun NG. Nothing in this Memorandum Opinion and Order is intended to fully resolve any of the arguments presented by the parties in the State Action or preclude other arguments that may be raised regarding the enforceability of the Deed CC&Rs in the appropriate forum.[140]

**Conclusion**

IT IS THEREFORE ORDERED that, for the reasons stated herein, the Debtors' request to sell the Property free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363(f)(4) is DENIED.

IT IS FURTHER ORDERED that, to adequately protect the interests of Sun NG under 11 U.S.C. § 363(e), the Property shall be subject to the Deed CC&Rs, without any warranty as to their validity or enforceability, in any sale or refinance thereof, until the dispute is resolved in an appropriate form.

IT IS FURTHER ORDERED that the Debtors shall submit a proposed form of Notice of the Sale and Auction Hearing (revised Exhibit D to the Motion) consistent with this Court's Order. The Debtors may submit the revised Exhibit D on an *ex parte* basis for approval.

IT IS FURTHER ORDERED that the *Notice of (I) Potential Assumption and*

---

[140] Nothing in this Order shall be construed as prohibiting the parties from seeking adjudication of the property interest in this Court through an adversary proceeding under Fed. R. Bankr. P. 7001(b).

*Assignment of Executory Contracts and Unexpired Leases; and (II) Proposed Cure Amounts*, attached as Exhibit E to the Motion, is appropriate and is hereby APPROVED.

IT IS FURTHER ORDERED that all further relief is DENIED.

# # #